## Jifkins *v.* Schimpff, Appellant.

*Contract—Sale—Purchase of shares of stock—Increase of stock—Evidence—Interest.*

1. In an action of assumpsit to recover back purchase money paid by plaintiff to defendant for ten shares of the stock of a corporation capitalized for $10,000, which shares the plaintiff had never received, the plaintiff is entitled to recover the amount of money which he had

paid with interest for its detention, where it appears that the defendant had tendered to him ten shares of stock, the certificates of which showed a capitalization of $60,000, but offers no proof at the trial that the stock of the incorporation had been increased from $10,000 to $60,000 in the manner prescribed and regulated by statute in Pennsylvania.

*Practice, C. P.—Charge—Mistake.*

2. A verdict and judgment for plaintiff will not be reversed because the trial judge in his charge attributed certain words to the plaintiff which had been used by the defendant, where it appeared that the judge's attention was not called to the slip at the time, and that the mistake did not in fact do the defendant any harm.

Argued March 6, 1912.   Appeal, No. 15, March T., 1912, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1907, No. 641, on verdict for plaintiff in case of Mary E. Jifkins v. Eugene Schimpff.   Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Assumpsit to recover back money had and received. Before O'NEILL, J.

At the trial it appeared that plaintiff claimed the sum of $1,000 which he had paid for ten shares of the stock of a corporation capitalized at $10,000, but which shares he had never received.   He was tendered a certificate for ten shares, which showed on its face a capitalization of $60,000, but there was no proof that the capital stock of the company had been increased according to law.

Verdict and judgment for plaintiff for $1,155.   Defendant appealed.

*Errors assigned* among others were (2–6) above instructions, quoting them.

The court charged in part as follows:

[Several times after that he went to see Mr. Schimpff and asked him to deliver the shares of stock or return him the money; and at one time he said, " I have nothing whatever to show for my money, give me a receipt for

it." Mr. Schimpff said, "You have your check. "Well," he said, "that is a receipt for nothing," whereupon he gave him a check which read, "Received from Henry Jifkins the sum of $1,000." Signed "Eugene Schimpff," and nothing more. Upon another occasion he went to him and received a second receipt in which the receipt of $1,000 is acknowledged and signed by Mr. Schimpff with the added word " treasurer."] [2]

[There is no evidence in this case, however, that the stock of the company was ever increased to $60,000. They introduced a minute here showing a resolution that the company intended to do so, but whether or not they ever did so we have no evidence.] [3]

Defendant presented this point:

1. If the jury believe that the plaintiff, Henry Jifkins, bargained for ten shares of the contemplated increased issue of the Moscow Sand & Gravel Company, with E. Schimpff, acting on behalf of the company, to be delivered by the company, after the increase had been made, then the verdict must be for the defendant. *Answer:* I affirm that proposition. If you believe the story of the defendant you may find for the defendant: but there is no evidence of any increase of the stock. [4]

Plaintiff presented this point:

1. If the jury believe that the plaintiff, Jifkins, gave to the defendant, Schimpff, on March 7, 1907, his check for $1,000 in payment for ten shares of stock in a company known as Moscow Sand & Gravel Company with a capital stock of $10,000, and further believe that the defendant, Schimpff, has not repaid the sum of $1,000 or assigned to the plaintiff ten shares of stock in that company with a capitalization of $10,000, then your verdict should be in favor of the plaintiff for the sum of $1,000 with interest from March 7, 1907. *Answer:* We affirm that proposition. [5]

2. If the jury should believe that even though Schimpff, the defendant, took the money and placed it in the treasury of the company, yet if they further believe that

Schimpff took the money from the plaintiff for ten shares of stock in a corporation with a capital stock of $10,000 after suit was brought, and believe there was no conversation between the plaintiff and the defendant at the time of the delivery of the check with reference to an increased capitalization your verdict should be in favor of the plaintiff for $1,000 with interest from March 7, 1907. *Answer:* We affirm that proposition. [6]

*Cornelius Comegys,* for appellant.

*M. J. Martin,* with him *David J. Davis,* for appellee.

OPINION BY PORTER, J., July 18, 1912:

Henry Jifkins brought this action to recover money alleged to have been paid by him, to the defendant, for ten shares of capital stock of the Moscow Sand & Gravel Company, a Pennsylvania corporation, which stock the defendant had, after repeated demands of the plaintiff, failed to deliver. He recovered a verdict in the court below, afterwards died and the present appellee was substituted as plaintiff, and judgment was subsequently entered upon the verdict. The defendant appeals.

The oral agreement for the sale of the stock was made on March 7, 1907, and Jifkins on that day paid to the defendant, by check, the sum of $1,000. The following facts were formally admitted by the defendant at the trial, viz., the amount of the capital stock of the Moscow Sand & Gravel Company, legally authorized, at the date of the agreement for the sale of these ten shares, was $10,000, all of which had been fully paid and issued and there was at the time no stock in the treasury of the company. The defendant after having thus formally admitted that at the time of the contract the legal limit of the stock which the corporation was authorized to issue was $10,000, subsequently offered in evidence a certificate for ten shares of stock in the corporation, which certificate he asserted that he had tendered to the plaintiff, after this

action was brought, in full discharge of his obligation under his contract for the sale of the stock. The certificate thus offered in evidence disclosed upon its face that it purported to represent ten shares of stock, of the par value of $100 each of the corporation named, but it also disclosed that it was issued upon an alleged total capitalization of $60,000. The learned judge of the court below held that, as it was an admitted fact that at the time the contract for the sale was made the total lawfully authorized capitalization of the company was $10,000, that in order to render this certificate admissible as showing performance on the part of the defendant, it was incumbent on him to show that the capitalization of the company had been lawfully increased. Contracts are to be construed in the light of the circumstances under which and of the subject-matter with regard to which the parties are dealing. When the defendant agreed to sell to the plaintiff and accepted payment for ten shares of the capital stock of the corporation, that constituted one-tenth of the entire authorized capital of the company. The certificate which the defendant tendered in alleged performance of his contract showed upon its face that he only proposed to deliver to the plaintiff one-sixtieth of the capital stock of the company. The defendant in his oral testimony admitted that the stock which he proposed to deliver was part of a new issue, in excess of the capitalization originally lawfully authorized. The burden was certainly upon the defendant to show that the capital stock of the company had been lawfully increased. The manner in which the capital stock of a corporation of this character can be increased is prescribed and regulated by statute in Pennsylvania and can be accomplished in no other way. The defendant entirely failed to show that any attempt had been made to comply with the statutory provisions in increasing the capital stock of this corporation, and the first and fourth specifications of error are overruled.

The second specification of error refers to an alleged

inaccuracy of the court in quoting the testimony of the plaintiff. The court in reciting the testimony may have given the jury to understand that the plaintiff had testified that, at a time when he was demanding his certificate of stock, he said to the defendant, "I have nothing whatever to show for my money, give me a receipt for it"; and that the defendant had replied, "You have your check"; whereupon plaintiff said, "Well, that's a receipt for nothing." The plaintiff had not so testified, but this defendant had himself testified that those very words were used. The only mistake of the court was that he attributed this language to the plaintiff instead of to the defendant, this appellant. It certainly did the defendant no harm to have the court thus attribute to another witness, the very words which he himself had used in his testimony. The slip of the judge in thus attributing the testimony to the wrong witness ought, if the defendant thought it worked injury to his cause, to have been called to the attention of the judge at the time. The inaccuracy involved a mere detail of the testimony, not directly material to the issue, and as the defendant had testified that the words were actually used at a conversation between the parties, his learned counsel was no doubt of opinion that it did not require correction. This specification of error is dismissed.

The plaintiff had testified that the stock which he purchased was that of the corporation as it then existed, with a total capitalization of $10,000; that the stock was to be delivered presently; that he had made repeated demands for the stock and defendant had put him off from time to time and entirely failed to make delivery; that after being thus baffled for more than six months he had demanded his money and upon refusal of the defendant to pay had brought this action. The plaintiff was not seeking to recover damages upon the theory that the stock had advanced in value or that it was worth more than par; all that he sought to recover was the actual damages which he had sustained. If the jury believed

his testimony the damage which he had sustained by the failure of the defendant to keep, the contract was the amount of the money which plaintiff had paid upon the contract and the loss of the use of it from the time it was paid, which is to be measured by interest at the rate established by law. The defendant had wrongfully retained the plaintiff's money, at the same time declining to perform the contract upon which it was paid, and he was liable for interest during the period which he thus held it. The fifth and sixth specifications of error are without merit.

The judgment is affirmed.